IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH LATULAS, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO. 4:CV-04-1907 |
| | : | |
| | : | (Judge Jones) |
| JOSEPH V. SMITH, ET AL., | : | |
| Defendants | : | |

## **MEMORANDUM AND ORDER**

December 22, 2005

**Background**

Joseph Latulas ("Plaintiff" or "Latulas"), an inmate presently confined at the United States Penitentiary, in Lewisburg, Pennsylvania ("USP-Lewisburg"), initiated this pro se civil rights action.[1]  Service of the complaint was previously ordered.

Named as Defendants are the following seventeen (17) USP-Lewisburg officials: Warden Joseph Smith; Lieutenants T. Hooper and M. Rios; Captain Becky Clay; Psychologist  T. Lyn; Counselor Tim Ranck; Nurse Practitioner Cynthia Lewis; Treatment Specialist E. Holencik; Associate Wardens T. R. Sniezek and Troy Levi; and Correctional Officers George Kulago, Bruce Heiser, S. Puckey, J. Dressler, T. Crawford, T. Leisenfeld, and H. Gottshell.

---

[1] Latulas pled guilty to armed robbery of an automobile in the United States District Court for the Eastern District of Texas.  He was sentenced on October 28, 1994 to a one hundred and eighty (180) month term of imprisonment.  The Plaintiff has been confined at USP-Lewisburg since March 15, 2004 and his projected release date is September 25, 2007.

Plaintiff initially states that he requested to speak with unidentified correctional staff members while in the prison's shower room on April 20, 2004. Defendant Heiser allegedly responded by directing that tear gas be used against Latulas. According to the complaint, Lieutenant Hooper subsequently sprayed tear gas on Latulas' face and body "causing me to burn all over." (Rec. Doc. 1, ¶ IV(1)). Plaintiff asserts that he was then hogtied by Defendants Heiser, Puckey, Leisenfeld, Crawford, and Kulago and carried to a dry strip cell. During this transfer, those correctional officers purportedly dropped Latulas on the floor a few times and hit his head against a door frame several times. After being placed in the dry strip cell, Plaintiff states that he was thrown face down on a metal bed. The complaint contends that in addition to the tear gas induced burns, Latulas also suffered a bruised right shoulder, wrist lacerations, and the tear gas aggravated his chronic asthma to the point that he suffered an asthmatic attack. He also maintains that Defendant Lewis denied him adequate medical treatment for his injuries.

The second part of the complaint asserts that on June 4, 2004, Latulas became distraught when informed that he was to be placed "in the S.M.U. program" and made "an irrational statement that I would hurt myself." Id. at (2). As a result, Latulas was placed in a strip cell where he was purportedly subjected to verbal harassment and unconstitutional conditions of confinement including denial of meals and showering privileges. He was also placed in physical restraints

for several days until he agreed to take a cell mate. While housed in the strip cell on July 1, 2004, Officer Gottshell allegedly provided Plaintiff with a razor and suggested that he commit suicide. Latulas further claims that Defendant Gottshell subjected him to repeated verbal harassment following the April 20, 2004 incident. As relief, Plaintiff seeks removal from the S.M.U. program, a transfer to another federal correctional facility as well as compensatory and punitive damages.

In response to the complaint, Defendants have filed a Motion to Dismiss or in the alternative for Summary Judgment ("the Motion"). (Rec. Doc. 16). The Motion is unopposed.

**Standard of Review:**

Defendants' Motion is accompanied by evidentiary materials [documents] outside the pleadings which are relevant for purposes of both determining the issue of administrative exhaustion as well as their alternative arguments. Rule 12(b) provides in part as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b). The Court will not exclude the evidentiary materials [documents] accompanying Defendants' Motion. Thus, their Motion will be treated as solely seeking summary judgment.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. '[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)....'

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, supra, 106 S.Ct. at 2553 and 2554. Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence"

4

to defeat the motion, consisting of verified or documented materials. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. Id. In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

**Discussion:**

  **A.    Exhaustion**

Defendants' initial argument maintains that Plaintiff failed to exhaust his administrative remedies with respect to his claims regarding the alleged events of April 20, 2004 and his contention that Correctional Officer Gottshell provided him with a razor and encouraged him to commit suicide.

42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims

5

for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)).

An inmate's failure to comply with the administrative exhaustion requirement constitutes an affirmative defense. See, e.g., Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 2000), cert. denied, 532 U.S. 1065 (2001); Jenkins v. Haubert, 179 F.3d 19, 29 (2d Cir. 1999); Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997)(holding, in the context of a Title VII case, that failure to exhaust administrative remedies is an affirmative defense). Consequently, a prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). Rather, it is the burden of a defendant asserting the defense to plead and prove it. Id.; Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997); Charpentier v. Godsil, 937 F.2d 859 (3d Cir. 1991); Fed.R.Civ.P. 8(c).

The BOP has established a multi-tier Administrative Remedy Program whereby

a federal prisoner may seek review of any aspect of his imprisonment.[2] See 28 C.F.R. §§ 542.10-542.19 (1998). "This program applies to all inmates confined in institutions operated by the Bureau of Prisons, to inmates designated to Community Corrections Centers ("CCCs") under Bureau of Prisons' responsibility, and to former inmates for issues that arose during their confinement but does not apply to inmates confined in other non-federal facilities." Id. at § 542.10.

The program provides that, with certain exceptions, "... an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request For Administrative Remedy."[3] Id. at § 542.13(a). Next, if informal resolution fails, the inmate must submit "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within 20

---

2. Matters excluded from this program are set forth at 28 C.F.R. § 542.12, which states as follows:

> (a) An inmate may not use this Program to submit a Request or Appeal on behalf of another inmate. This program is intended to address concerns that are personal to the inmate making the Request or Appeal, but shall not prevent an inmate from obtaining assistance in preparing a Request or Appeal, as provided in § 542.16 of this part.
>
> (b) Requests or Appeals will not be accepted under the Administrative Remedy Program for claims for which other administrative procedures have been established, including tort claims, Inmate Accident Compensation claims, and Freedom of Information or Privacy Act requests. Staff shall inform the inmate in writing of the appropriate procedure if the Request or Appeal is not acceptable under the Administrative Remedy Program.

3. CCC inmates are not required to seek informal resolution. Id. at § 542.13(b). Informal resolution is not required for those matters identified in § 542.14(d), which include sensitive issues and DHO, Control Unit, and Controlled housing status appeals. Id. Additionally, informal resolution may be waived in individual cases at the discretion of either the Warden or the institution Administrative Remedy Coordinator "when the inmate demonstrates an acceptable reason for bypassing informal resolution." Id.

"calendar days following the date on which the basis for the Request occurred." Id. at § 542.14(a). If a valid reason for delay is given, an extension of the filing time may be granted. Id. at 542.14(b). The Warden has 20 calendar days from the date the Request or Appeal is filed in which to respond. Id. at § 542.18.

If not satisfied with the Warden's response, an inmate may appeal on the appropriate form (BP-10) to the Regional Director within 20 calendar days of the date the Warden signed the response. Id. at § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed on the appropriate form (BP-11) to the General Counsel within 30 calendar days from the date the Regional Director signed the response. Id. "When the inmate demonstrates a valid reason for delay, these time limits may be extended." Id. The Regional Director has 30 calendar days to respond and the General Counsel has 40 calendar days in which to respond. Id. at § 542.18.

The response time provided for at each level may be extended in writing "once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level." Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

In support of their argument, Defendants have submitted a sworn declaration by USP-Lewisburg Supervisory Attorney L. Cunningham who states that although

8

Plaintiff filed numerous administrative grievances during the course of his federal confinement, he did not initiate any grievances regarding the alleged events of April 20, 2004 or with respect to his claim that Defendant Gottshell gave him a razor and encouraged him to commit suicide.  (See Rec. Doc. 18, Ex. 1).  Cunningham's statements are bolstered by submitted copies of Plaintiff's relevant institutional records pertaining to his employment of the BOP's inmate grievance system.

A review of the undisputed record, especially Attorney Cunningham's declaration submitted under penalty of perjury and accompanying exhibits, shows that Defendants have satisfied their burden under Williams of establishing that Latulas' allegations relating to the purported events of April 20, 2004 and his claim that Defendant Gottshell encouraged him to commit suicide were not administratively exhausted.   Plaintiff has also not adequately demonstrated any proper basis as to why he should be excused from the exhaustion requirement.  Pursuant to the above discussion, dismissal of the April 20, 2004 related claims for non-exhaustion is appropriate.  Based on that determination, summary judgment will be granted in favor of Defendants Heiser, Puckey, Liesenfeld, Crawford, Kulago, Lewis, Ranck, Hooper, and Gottshell.

### B.     Personal Involvement

Defendants next argue that there are no assertions of personal involvement by Smith, Snizek, Clay, Levi, Holencik, Dressler, and Lyn in any unconstitutional

conduct. As previously noted, this argument is unopposed.

A plaintiff, in order to state a viable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law; and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.

Rode, 845 F.2d at 1207.

Other than being named as Defendants, the complaint fails to set forth any specific averments with respect to Warden Smith, Associate Wardens Sniezek and Levi, Psychologist Lyn, Captain Clay, Correctional Treatment Specialist Holencik, and Correctional Officer Dressler. There are no allegations that any of those officials

participated in the purported mistreatment of the Plaintiff following his June 4, 2004 placement in a strip cell. Likewise, there are no contentions that the constitutional deprivations/mistreatment which purportedly transpired during Latulas' strip cell confinement were ordered or condoned by any of those Defendants. In addition, no facts have been alleged which could support a claim that the purported June 2004 violations of Plaintiff's constitutional rights resulted from any policy or custom approved by the Warden or any of the other above listed Defendants.

In conclusion, there are simply no claims set forth in the complaint that such Defendants had any knowledge, participation or acquiescence in the alleged deprivations. Consequently, it appears that the Plaintiff is attempting to establish liability against those officials solely on the basis of their supervisory capacities. Consequently, under the standards announced in Rode, Defendants Smith, Sniezek, Clay, Levi, Holencik, Dressler, and Lyn are entitled to the entry of summary judgment in this case.

The complaint does allege that approximately four (4) days after his June 4, 2004 placement in a dry strip cell, Latulas was visited by Lieutenant Rios who told the prisoner that he would remain in the strip cell for the duration of the S.M.U. program if he did not take a cellmate. Defendants assert that Plaintiff was afforded meals and showering privileges during his strip cell confinement and that Rios is entitled to qualified immunity.

11

There are no assertions in the complaint that Rios threatened the Plaintiff with denial of food and/or showering privileges. The complaint also contains no clear indication that Rios had knowledge that those purported deprivations were taking place. Likewise, the complaint does not indicate that Rios directed or condoned the use of physical restraints on Latulas.

However, because the complaint asserts that the denial of showering privileges and meals began prior to Rios' visit,[4] the complaint conceivably sets forth an arguable assertion that Rios was aware of some, if not all of those alleged deprivations. However, as it is unclear when Plaintiff was placed in physical restraints, it cannot be concluded that Rios knew of, participated in, or condoned such action. Since there are no facts to support a claim against Rios with respect to the use of physical restraints, he is entitled to summary judgment with respect to that allegation.

Once the moving party has satisfied its burden of identifying evidence which demonstrates an absence of a genuine issue of material fact, see Childers, 842 F.2d at 694, the nonmoving party is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex, 477 U.S. at 324.

In relevant part, Rule 56(e) states:

---

[4] Plaintiff alleges that he was denied showers from June 5-18, 2004 and meals from June 5-12, 2004. Thereafter, Latulas admits that he was provided with bag lunches, specifically, peanut butter and jelly sandwiches for five days.

12

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

When Rule 56(e) shifts the burden of proof to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. Celotex, 477 U.S. at 324.  If, however, "the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."  Advisory Committee Notes to F.R.C.P. 56(e)(1963 Amend.).

Thus, a summary judgment motion may be granted if the Plaintiff fails to establish the existence of an element essential to his case.  Robertson v. Allied Signal, Inc., 914 F.2d 360, 366 (3d Cir. 1990) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

Undisputed institutional records from the USP-Lewisburg Special Housing Unit provide that from June 4-19, 2004 the Plaintiff received three meals a day, took five showers, and declined showering privileges on two occasions. (See Rec. Doc. 18, at 17-19).  Since the Plaintiff has not opposed the Summary Judgment Motion, he has equally failed to satisfy his obligation of coming forward with affirmative evidence to establish a genuine issue of material fact with respect to the alleged temporary denial

of showering privileges and food during his June 2004 strip cell placement. Pursuant to the standards set forth in Rule 56(e), entry of summary judgment in favor of Defendant Rios with respect to those assertions is also appropriate.

### C. Verbal Harassment

Plaintiff also contends that he was subjected to verbal harassment on numerous occasions following the April 20, 2004 incident. It has been held that the use of words, however violent, generally do not set forth a viable civil rights claim. Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973), cert. denied, 414 U.S. 1033 (1973); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D. Va. 1973); see also Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa. 1986) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.).

It has also been held that a constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and


unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause, see Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991), cert. denied, 502 U.S. 879 (1991).

Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim.  For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words.  See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife).  It has also been found that verbal harassment can rise to a constitutional level in a situation where fulfillment of the threat was conditioned on the inmate's exercising some constitutionally protected right.  Bieros v. Nicola, 860 F. Supp. 226, 233 (E.D. Pa. 1994); see also Prisoners' Legal Ass'n, 822 F. Supp at 189; Murray, 809 F. Supp. at 384.

Latulas has not alleged that the verbal harassment was accompanied by any reinforcing physical act as contemplated under Northington.  Likewise, the purported threats were not premised on Plaintiff's future engagement in a constitutionally protected activity.  Thus, since Latulas did not suffer a change or denial of a constitutionally protected right or status, his allegations of verbal abuse and threats do not rise to the level of a viable civil rights claim.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendants' dispositive motion is construed as solely seeking summary judgment.

2. Defendants' Motion for Summary Judgment (doc. 16) is GRANTED.

3. Plaintiff's claims regarding the events of April 20, 2004 and his allegations against Defendant Gottshell are dismissed without prejudice for failure to exhaust administrative remedies as required pursuant to 42 U.S.C. § 1997e(a).

4. Summary judgment is entered in favor of the Defendants with respect to the claims stemming from Plaintiff's June 4, 2004 placement in a strip cell and the assertions of verbal harassment.

5. The Clerk of Court is directed to CLOSE the case.

                                                  s/ John E. Jones III  
                                                  JOHN E. JONES III  
                                                  United States District Judge